GARY M. RESTAINO
United States Attorney
District of Arizona
SHEILA PHILLIPS
Assistant United States Attorney
Michigan State Bar No. P51656
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: sheila.phillips2@usdoj.gov
Attorneys for Plaintiff

FILED ___ LODGED
___ RECEIVED ___ COPY

APR 1 1 2023

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

REDACTED FOR
PUBLIC DISCLOSURE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. | CR-23-00555-PHX-DWL (DMF) |
|---|---|---|
| Plaintiff, | | **INDICTMENT** |
| vs. | VIO: | 18 U.S.C. § 1343 (Wire Fraud) Counts 1-3 |
| Erikia Annette Hudson, | | |
| Defendant. | | 18 U.S.C. § 924(a)(1)(A) (False Statement During the Purchase of a Firearm) Counts 4-10 |
| | | 18 U.S.C. §§ 924(d) and 981; 21 U.S.C. §§ 853 and 881; and 28 U.S.C. § 2461(c) (Forfeiture Allegations) |

**THE GRAND JURY CHARGES:**

**INTRODUCTION**

At all times relevant to Count 1 through Count 3 of the Indictment, Defendant ERIKIA ANNETTE HUDSON schemed to prepare and submitted false and fraudulent loan and loan forgiveness applications to defraud the United States' Small Business Administration, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises. As a result, Defendant ERIKIA

ANNETTE HUDSON received at total of $28,677 in Government loans and knowingly converted these funds for her own personal use in violation of the terms of the loans, thus committing theft of Government money.

### THE SMALL BUSINESS ADMINISTRATION

The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA often facilitated loans through banks, credit unions, and other lenders. These loans had government-backed guarantees if certain requirements were met.

### THE ECONOMIC INJURY DISASTER LOAN PROGRAM

1.    The SBA provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters is the Economic Injury Disaster Loan ("EIDL") program.

2.    The CARES Act also authorized the SBA to provide low-interest loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. This program is called the Economic Injury Disaster Loan program ("EIDL").

3.    Through EIDL, the SBA can issue advances of up to $10,000 to small businesses within three days of applying for an EIDL loan. The amount of the advance is determined by the number of employees that the applicant certified as employing as of January 31, 2020. EIDL advances did not have to be repaid.

4.    Small businesses, to include sole proprietorships, affected by COVID-19 could apply for an EIDL loan if they were in operation before on or before January 31, 2020, and had 500 or fewer employees.

5.    To obtain an EIDL loan and/or advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, which

included business name, date of business establishment, number of employees as of January 31, 2020, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. The applicant was also required to certify that all the information in the application was true and correct to the best of the applicant's knowledge under penalty of perjury.

6. The self-certification section on the application read as follows: "CERTIFICATION AS TO TRUTHFUL INFORMATION: By signing this application you, [the applicant] certify that all information in your application and submitted with your application is true and correct to the best of your knowledge, and that you will submit truthful information in the future."

7. EIDL applications were submitted directly to the SBA. If the application was approved, the amount of the loan was determined, in part, on the information provided by the applicant about employees, revenue, and cost of goods sold. Any funds issued under an EIDL loan or advance were issued directly by the SBA. EIDL funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtained a loan under the PPP, the applicant would need to declare the EIDL, deduct those funds from the total loan eligibility, and not use the EIDL and PPP funds for the same purposes.

## THE PAYCHECK PROTECTION PROGRAM

The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. The CARES Act appropriated $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress increased its appropriations to add an additional $310 billion for additional PPP funding. The Economic Aid to Hard-Hit Small Businesses, Non-profits, and Venues Act was enacted on December 27, 2020, to continue assistance under the PPP. Under the

Economic Aid Act, the PPP was extended to provide additional funding for guaranteed SBA loans. In March 2021, the American Rescue Plan Act provided an additional $7 billion in program funding, which increased the total available PPP funding to about $813 billion.

To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative or owner) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative or owner) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

Among the types of businesses eligible for a PPP loan were individuals who operated under a "sole proprietorship" business structure. To be eligible to receive such a PPP loan, individuals had to report and document their income and expenses from the sole proprietorship, as typically reported to the Internal Revenue Service ("IRS") on Form 1040, Schedule C, for a given tax year. The lending institution or loan processor used this information and documents to calculate the amount of money the individual was entitled to receive under the PPP.

A PPP loan application was required to be processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA while processing the loan. PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities.

- 4 -

**PPP LOAN APPLICATION**

The PPP loan application (SBA Form 2483) required the business (through its owner or authorized representative) to make several affirmative certifications.  Among them, the owner or authorized representative was required to certify that each of the following statements were true:

a. The Application business was in operation on February 15, 2020, and has employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Internal Revenue Service ("IRS") Form(s) 1099-MISC;

b. The funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rules, and;

c.    The information provided in the application and information provided in all supporting documents and forms was true and accurate in all material respects.

**PPP LOAN FORGIVENESS PROGRAM**

The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.  PPP loan forgiveness is given to businesses who have either kept or rehired their employees while also keeping salary levels consistent from before the pandemic.

Under the applicable PPP rules, the full principal of the PPP loan and any accrued interest was eligible for forgiveness if, during the 8-to-24-week period following loan disbursement, the business used the PPP loan on permissible business-related expenses and used a certain portion of the loan proceeds towards payroll costs.  To apply for loan forgiveness, the borrower was required to complete a Loan Forgiveness Application (SBA Form 3508) and submit it to its lender, or the lender that was servicing the PPP loan.  The Loan Forgiveness Application then required the borrower to submit: (1) a PPP Loan Forgiveness Calculation Form; (2) PPP Schedule A; and (3) a Schedule A Worksheet.

At any time up to the maturity date of the loan, a borrower could apply for loan

forgiveness so long as all the loan proceeds for which the borrower was requesting forgiveness had been used. Borrowers were eligible for forgiveness of eligible payroll costs if at least 60% of the loan proceeds were spent on actual payroll costs during the covered period. Borrowers were also eligible for forgiveness of nonpayroll costs such as mortgage payments, rent or lease payments, and utility payments. To be eligible, nonpayroll costs could not exceed 25% of the total forgiveness amount. If borrowers did not apply for forgiveness within ten months after the last day of the covered period, then PPP loan payments were no longer deferred, and borrowers were required to repay their loans to their PPP lender.

Like the PPP loan application, the PPP Loan Forgiveness Application required the business (through its authorized representative) to make several affirmative certifications. Among them, the business's authorized representative was required to certify the following statements were true:

a. The dollar amount for which forgiveness is requested "was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments)";

b. "The borrower understands that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charge"; and

c. "The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects."

## SCHEME TO DEFRAUD

From on or about July 2, 2020, to on or about October 18, 2022, Defendant ERIKIA ANNETTE HUDSON devised and intended to devise a scheme to defraud the SBA, EIDL FUNDER and PPP LENDER, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

It was a part of the scheme for Defendant ERIKIA ANNETTE HUDSON to make

false representations on EIDL and PPP loan applications and on the PPP loan forgiveness application. Defendant ERIKIA ANNETTE HUDSON's false representations included the amount of income she received from two businesses that she claimed to have owned and operated, the number of employees for each reported business, the expenses incurred during the purported operation of those businesses, and the submission of a fraudulent or fictious tax form on the PPP Loan application.

On or about each of the dates set forth below, in the District of Arizona, Defendant ERIKIA ANNETTE HUDSON, and for the purpose of executing the scheme to defraud, submitted, and caused to be transmitted by means of wire communication in interstate commerce the signals and sounds describe below for each count, each transmission constituting a separate count.

| Count | On or about Date | Description of Interstate Wire Transaction |
|-------|------------------|--------------------------------------------|
| 1 | July 2, 2020 | Online submission of EIDL application (3308380063) to the SBA for a cleaning business purportedly owned by Defendant. |
| 2 | April 23, 2021 | Online submission of PPP loan application (4899978909) to the SBA for a childcare business purportedly owned by Defendant. |
| 3 | August 15, 2022 | Online submission of PPP loan forgiveness based on operating costs associated with Defendant's purported childcare business. |

**DEFENDANT'S CONDUCT**

**COUNT 1**

It was part of the scheme that Defendant ERIKIA ANNETTE HUDSON submitted, and caused to be submitted, an SBA Economic Injury Disaster Loan (EIDL) loan application on July 2, 2020, for a sole proprietorship owned by Defendant ERIKIA

- 7 -

ANNETTE HUDSON that had purportedly been in existence since 2014 and had earned gross income of $8,500 for tax year ended 2020. The business classification was listed as a "Maid and Cleaning Service." This loan application was submitted for the purpose of executing the scheme described herein, and attempting to do so, caused to be transmitted by means of wire communication from the District of Arizona to a location outside the state of Arizona signals and sounds constituting an online submission of SBA EIDL Loan number 3308380063 on behalf of a purported business run by Defendant ERIKIA ANNETTE HUDSON.

On or about July 7, 2020, in reliance on Defendant ERIKIA ANNETTE HUDSON's false representations in her SBA EIDL loan application, the Small Business Administration deposited $10,000 into a bank account in Defendant ERIKIA ANNETTE HUDSON's name at Bank of America Bank.

In furtherance of the scheme, Defendant ERIKIA ANNETTE HUDSON spent loan proceeds on transfers to peers via Cash App and Zelle, made automatic teller machine (ATM) withdrawals, purchases at Fry's Food and Drug, purchases at various retailers (i.e., H&M, Build-a-Bear Workshop, Hat Club, Target, etc.), at Sprint Wireless, to organizations that provide products and services to inmates, and made other miscellaneous expenses. All EIDL proceeds were spent within sixteen days of receipt.

From on or about July 2, 2020 (application date), to on or about July 7, 2020 (loan proceeds date), in the District of Arizona, Defendant ERIKIA ANNETTE HUDSON, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described above.

All in violation of Title 18, United States Code, Section 1343.

## COUNT 2

It was part of the scheme that Defendant ERIKIA ANNETTE HUDSON submitted, and caused to be submitted, an SBA Paycheck Protection Program (PPP) loan application on April 23, 2021, for a sole proprietorship owned by Defendant ERIKIA ANNETTE HUDSON that had purportedly been in existence since 2017 and had earned gross income

of $89,655 for tax year ended 2020. The business classification was listed as "childcare services." This loan application was submitted for the purpose of executing the scheme described herein, and attempting to do so, caused to be transmitted by means of wire communication from the District of Arizona to a location outside the state of Arizona signals and sounds constituting an online submission of SBA Loan 4899978909 on behalf of a purported business run by Defendant ERIKIA ANNETTE HUDSON.

On or about May 18, 2021, in reliance on Defendant ERIKIA ANNETTE HUDSON's false representations in her SBA loan application, Prestamos CDFI, a certified Community Development Financial Institution and SBA lender, deposited $18,677 into a bank account in Defendant ERIKIA ANNETTE HUDSON's name at Bank of America Bank.

In furtherance of the scheme, Defendant ERIKIA ANNETTE HUDSON spent loan proceeds on transfers to peers via Cash App and Zelle, various living expenses (i.e., fuel, laundry, groceries, utilities, etc.), purchases at various retailers (i.e., Finish Line, Foot Locker, Amazon, Ross Stores, etc.), payments to Arizona Fines/Fees and Restitution Enforcement (AZFARE), a single purchase at Fry's Food and Drug totaling more than $1,700, ATM withdrawals, a purchase at Somos Dental and Orthodontics, and other miscellaneous expenses. All PPP proceeds were spent within one month of receipt.

From on or about April 23, 2021 (application date), to on or about May 18, 2021 (loan proceeds date), in the District of Arizona, Defendant ERIKIA ANNETTE HUDSON, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described above.

All in violation of Title 18, United States Code, Section 1343.

## COUNT 3

It was part of the scheme that Defendant ERIKIA ANNETTE HUDSON submitted, and caused to be submitted, an SBA PPP Loan Forgiveness Application on August 15, 2022, in relation to PPP loan 4899978909. In furtherance of the scheme, Defendant

- 9 -

ERIKIA ANNETTE HUDSON included a coverage period of May 4, 2021, through October 18, 2021, and certified that PPP loan proceeds of $18,677 were used in compliance with requirements of the Paycheck Protection Program Rules (15 U.S.C. § 636 (7)(a)(36)) to receive forgiveness for the full loan amount. Paycheck Protection Program Rules (15 U.S.C. § 636 (7)(a)(36)) include, in part, allowable uses of covered loans to be payroll costs, costs related to the continuation of group health care benefits, employee salaries, payments of interest on any mortgage obligation, rent, utilities, interest on any other debt obligations that were incurred before the covered period, covered operations expenditures, covered property damage costs, covered supplier costs, covered worker protection expenditures, etc. Prestamos CDFI, LLC granted Defendant ERIKIA ANNETTE HUDSON loan forgiveness on August 16, 2022.

From on or about August 15, 2022 (loan forgiveness application date), to on or about August 16, 2022 (loan forgiveness date), in the District of Arizona, Defendant ERIKIA ANNETTE HUDSON, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described above.

All in violation of Title 18, United States Code, Section 1343.

### COUNTS 4-10

On or about the dates listed below, in the District of Arizona, Defendant ERIKIA ANNETTE HUDSON knowingly made false statements and representations to the businesses listed below, each of which was licensed under the provisions of Chapter 44 of Title 18, United States Code, with respect to information required by the provisions of Chapter 44 of Title 18, United States Code, to be kept in the records of each listed business, in that Defendant ERIKIA ANNETTE HUDSON did execute a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms Transaction Record, in each of the counts below, stating that Defendant ERIKIA ANNETTE HUDSON resided at an address on Ruth Ave. in Peoria, whereas in truth and fact, Defendant ERIKIA ANNETTE HUDSON knew that she resided at a different address:

- 10 -

| Count | Date | Business |
|---|---|---|
| 4 | 3-20-22 | Shooters World of Peoria, Peoria AZ |
| 5 | 5-30-22 | GCS Armory, Surprise AZ |
| 6 | 5-30-22 | Shooters World of Peoria, Peoria AZ |
| 7 | 6-29-22 | Gun Club 82, Gilbert AZ |
| 8 | 7-2-22 | Tombstone Tactical, Phoenix AZ |
| 9 | 7-8-22 | Bear Arms Firearms, Scottsdale AZ |
| 10 | 7-9-22 | Patriot Nation, Phoenix AZ |

In violation of Title 18, United States Code, Section 924(a)(1)(A).

**FORFEITURE ALLEGATIONS**

The Grand Jury realleges and incorporates the allegations of Counts 1 through 10 of this Indictment, which are incorporated by reference as though fully set forth herein.

Pursuant to 18 U.S.C. §§ 924(d) and 981, 21 U.S.C. §§ 853 and 881, and 28 U.S.C. § 2461(c), and upon conviction of the offense(s) alleged in Counts 1 through 10 of this Indictment, the defendant shall forfeit to the United States of America all right, title, and interest in (a) any property constituting, or derived from, any proceeds the persons obtained, directly or indirectly, as the result of the offense, and (b) any of the defendant's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense as to which property the defendant is liable.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(1) cannot be located upon the exercise of due diligence,

(2) has been transferred or sold to, or deposited with, a third party,

(3) has been placed beyond the jurisdiction of the court,

(4) has been substantially diminished in value, or

(5) has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States to seek forfeiture of any other property of said defendant up to the value of the above-described forfeitable property, pursuant to 21 U.S.C. § 853(p).

//

- 11 -

All in accordance with 18 U.S.C. §§ 924(d) and 981, 21 U.S.C. §§ 853 and 881, 28 U.S.C. § 2461(c), and Rule 32.2, Federal Rules of Criminal Procedure.

A TRUE BILL

/s/
_____
FOREPERSON OF THE GRAND JURY
Date:  April 11, 2022

GARY M. RESTAINO
United States Attorney
District of Arizona


/s/
_____
SHEILA PHILLIPS
Assistant U.S. Attorney

- 12 -